Chittenden, J.
The question presented is one of grave importance, rising, .as the respondent has well said, far above the personal right or privilege directly involved. We have, therefore, given it most thoughtful consideration in an endeavor to place our conclusions ;upon fundamental principles as well as upon the consideration of the cases cited in the argument. It should be distinctly understood that we are trying no question of the fitness or unfit *282 ness of Mr. Thatcher to practice law. We are required to determine one question only: Is the act of Legislature passed April 18th, 1911, authorizing and empowering Charles A. Thatcher to appear and act as attorney and counselor at law in all the courts of the state a valid law, or is it in conflict with the Constitution óf the state? If it is valid he is entitled to practice law at this bar. If it is not valid he is not entitled to so practice. •
The entire structure of our government rests upon the foundation of popular sovereignty. The people constitute the sovereign power and, by direct vote, they have established the Constitution of the state as the written expression of their will. It is the fundamental law to which all must conform, and which can only be changed by the people themselves. By the state Constitution the people have established the state government after the federal plan, that is, by dividing the government into three distinct branches — -the executive, legislative and judicial. Each of these branches is independent of the other and neither may encroach upon the functions and duties of the other. Upon the maintenance of this most excellent system of checks and balances must depend not only the efficiency, but the permanence of our free government. This has been clearly stated by Chief Justice Gibson of Pennsylvania as early as 1850. He said:
“The functions of the several parts of the- government are thoroughly separated, and distinctly assigned to the principal branches of it — the legislative, the executive, and the judiciary— which, within their respective departments are equal and coordinate. Each derives its authority, mediately, or immediately from the people; and each is responsible, mediately or immediately to the people for the exercise of it. When either shall have usurped the powers of one or both of its’fellows, then will have been effected a revolution, not in the form of government, but in its action. Then will there be a concentration of the powers of the government in a single branch of it, which, whatever' may be the form of the Constitution, will be a despotism— a government of unlimited, irresponsible and arbitrary rule. It is idle to say the authority of each branch is defined and limited in the Constitution, if there be not an independent power able and willing to enforce the limitations. Experience proves that *283 it is thoughtlessly but habitually violated; and the sacrifice of individual right is too remotely connected with the objects and contests of the masses to attract their attention.” (15 Pa. State, 18.)
That the judiciary has not been free at all times from such encroachment may be freely conceded. The duty, however, devolves peculiarly upon the judiciary, as the interpreter of the law, to see that these constitutional limitations are preserved. Speaking upon this duty the Supreme Court of Georgia used the following language:
“The right here asserted, is a necessary attribute of every court in the country, as will appear from the fact, that if there happens to be an irreconcilable variance between the Constitution — which is the fundamental law — and a particular act proceeding from the legislative body, that which has the superior obligation and validity, ought, of course, to be preferred; in other words, the Constitution ought to be preferred to the statute — the intention of the people to the intention of their agents. Nor does this conclusion, as is shown in the work first above cited, by any means suppose a superiority of the judicial to the legislative. It only. supposes that the power of the people is superior to both, and that where the will of the Legislature, declared in statutes, stands in opposition to that of the people, declared in the Constitution, the judges ought to be governed by the latter, rather than the former. They ought to regulate their decisions by the fundamental laws, rather than those which are not fundamental.” (8 Ga., 218.)
Judge Ranney, of the Supreme Court of Ohio, says:
“It is the right and duty of the judicial tribunals to determine, whether a legislative act drawn in question in a suit pending before them, is opposed to the Constitution of the United States, or of this state, and if so found, to treat it as a nullity."
The rule for construction is, stated by him as follows:
"In such cases the presumption is always in favor of the validity of the law; and it is only when manifest assumption of authority and a clear incompatibility between the Constitution and the law appear, that the judicial power will refuse to execute it.” (1 Ohio St., 77.)
*284 The rule as laid down by Judge Cooley is as follows:
“Except where the Constitution has imposed limitations upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not, in a particular ease. The courts are not the guardians of the rights of the people of the state, except as these rights are secured by some constitutional provision which comes within judicial cognizance.” (Cooley, Constitutional Limitations, 236.)
With the duty resting upon the court as above shown, and observing the rules of construction as above stated, let us inquire as to what, if any constitutional limitations effect the act in question.
Article II, Section 1, provides:
“The legislative power of this state shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."
Article IV, Section 1, provides:
"The judicial power of the state is vested in a Supreme Court, circuit courts, courts of common pleas, courts of probate, justices of the peace, and such other courts, inferior to the Supreme Court as the General Assembly may from time to time establish."
Article II, Section 32, provides:
“The General Assembly shall grant no divorce nor exercise any judicial power not herein expressly conferred.”
By this latter, section, it will be seen that the people have undertaken to especially guard this judicial power and permit its exercise only in and by its courts. And this is a salutary provision because legislative action is frequently upon ex parte hearing.
There is no definition in the Constitution of the term legislative, executive and judicial, but the distinction, in the main outline, is quite well defined.
That the Legislature may, in the exercise of the police power, enact laws prescribing certain necessary qualifications for admission, and for rules of procedure for both admissions to the *285 bar, and disbarment is undoubted, and the law has been so announced by many courts.
It is urged that, if this be true, then the Legislature may, in the exercise of that same power, appoint any individual to the office of attorney at law. But does that conclusion follow?
There can be no dispute but that the Legislature has power to enact'laws providing for court procedure; but because it may determine grounds for the granting of a new trial, it does not follow that it can by legislation direct a new trial in any given ease. This has been determined in some sixteen states where the question has arisen.
The Legislature has exclusive power in Ohio, to define crimes and provide punishment, but this does not make the administration of the criminal law less judicial.
We hold that the Legislature has full power to prescribe qualifications without which no one shall be admitted to practice law in the courts'of this state.
We further held that the Legislature may require the courts to disbar any attorney who is found, upon judicial inquiry, to no longer possess these moral qualifications essential to the proper administration of justice, but that the determination of the right to admission under those qualifications and the neces.sity for disbarment in each case, is a judicial act, resting with the courts alone. I will not undertake to review the cases examined, as my associates have done that.
We have examined every case cited, and many others. We find no case holding to the contrary: Every decision upon this question, from the foundation of our government, so far as we have been able to learn, has held that the admission of attorneys to practice at the bar of the courts is a judicial-act.
The rule is concisely and accurately stated in Volume 3, American & English Encyclopedia of Law, page 287, as follows:
“It lies within the power of the Legislature to prescribe the qualifications requisite to admission to the bar and the courts will have no authority to admit any person not possessing, the necessary qualifications; but the admission of an applicant to practice is a judicial act, and the attorney when admitted is *286 an officer and member of tbe - court. Tbe Legislature has no power, therefore, to provide that any person possessing certain qualifications must be admitted. It can not assume judicial powers, and in every case the courts are vested with discretion as to whether an applicant is entitled to admission.”
It has been held to be a judicial act by the Circuit Court of Hamilton County in the case of Wilson v. Whitacre, 4 C. C., 15.
We have endeavored to examine every case that has arisen in this country, in which this question was involved, and, with-' out a single exception they have held the act of admission to be the exercise of a judicial power. The very cases cited by the respondent so held.
There is no question as to the right of the Legislature of this state to pass special laws of the character prescribed by the Constitution, but they are not permitted, either by special or general act, to exercise judicial functions. In the several special acts cited by the respondent, as an exercise .of the claimed power to create attorneys at law, it is found, upon examination, that the Legislature has, in each case, recognized the right of the courts to pass upon their admission, and have not undertaken by the act, to create'any individual an attorney at law, except by the act now under examination.
In the act cited by the respondent for the relief of James A. Crawford, it was provided that he may be admitted to an examination for admission to the bar in accordance with the general law upon the subject, but without producing to the judges a certificate that he has regularly and attentively studied law during the period of two years previous to his application for admission.
In the act in 43 Ohio Laws, 20, the courts were permitted to examine Robert W. Russell for admission to practice in this state, notwithstanding the fact that he was, at the time, an alien In 50 O. L., 32, a like act was passed for the relief of Otto Drussell, and by an act in 53 O. L., 534, permission was given the district court to receive the application of Otho H. Velzler and Alpheus Hurd, they being, at the time, aliens, and permitting the courts to admit them to practice, and providing further that- *287 if said persons did not become naturalized within a certain length of time, that their licenses should be revoked.
Thus it will be seen that, in every instance in which the Legislature has enacted laws with reference to the admission of attorneys at law,> they have recognized the judicial power involved, and have never undertaken to exercise that power except in the case of the respondent.
So far as we have been able to assertain this is the first instance since the foundation of the federal government where a Legislature has undertaken to exercise this power. The respondent urged upon us a consideration of the brief of Theodore Dwight, filed in the ease reported in 22 N. Y., In re Cooper. We have made a careful examination of this brief. The first contention made by Mr. Dwight, and which he argués earnestly, is that the act of admission is a judicial act. We fail to find anything in the brief of Mr. Dwight which argues for the right or power of the Legislature to create an attorney at law by legislative enactment.
Whatever may be the fact in actual practice, the administration of justice requires' the highest ideals, and the strictest integrity upon the part of both the bench and the bar. If the courts are stripped of power to regulate and control the conduct of-the attorneys practicing at its bar, with reference to their practice, then indeed will this profession, which affords so many opportunities for improper conduct, be left open to ruthless and unprincipled persons without any restraint whatever.
The Legislature has made it the imperative duty of the courts, when complaint is made of improper conduct upon the part of a practicing attorney, to make judicial inquiry into the same, and to punish any such attorney at law found guilty of such offense. When, in obedience to such law, the court has made inquiry into the charges, and found the attorney guilty, and has imposed the punishment, it is not within the power of the Legislature, under the guise of a relief act, to set aside such finding by reinstating the attorney to practice.
The Supreme Court of this state long ago held, in the case of John A. King, 54 O. S., 415, that upon the disbarment of an attor *288 ney at law, the court rendering such decree retained a continuing jurisdiction over him for the purpose of entertaining any application for reinstatement. In other words, the order of disbarment operates as a continuing injunction restraining the person from practicing as an attorney at law until such order is vacated. Any act of the Legislature, therefore, which undertakes to reinstate the attorney operates expressly as an order vacating a previous order of the Supreme Court. Thus, in effect, does the Legislature of the state establish itself as the ultimate court of appeal.
The exercise of this power might not be so important in an individual case, but if it be contrary to the Constitution, it should not then be permitted as a precedent upon which further encroachments might be built. We quote from the Federalist, No. 78:
“The judiciary is, beyond comparison, the weakest of the three departments of power — that it can never attack, with success, either of the other two, and all possible care is requisite to enable it to defend itself against their attacks."
We are therefore convinced, from a careful study of the adjudicated cases, and upon consideration of the fundamental principles underlying our system of government, that this ant is clearly in conflict with the Constitution of the state, and is therefore void and of no effect.